# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELEANOR DEHOFF,** | : | Civ. Action No. 1:CV-03-1905 |
| | : | |
| **Plaintiff** | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| **LITTLESTOWN AREA SCHOOL DISTRICT** | : | |
| **and DR. ROBERT McCONAGHY,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM AND ORDER

This matter was tried to the Court on October 18, 2005. Following the conclusion of Plaintiff's presentation of her case, Defendants orally moved the Court for judgment as a matter of law. For the reasons explained below, the Court finds that Plaintiff has failed to establish that the Littlestown Area School District maintained or continues to maintain an unconstitutional "chain-of-command" policy. Accordingly, Defendants' motion for judgment as a matter of law will be granted.

## I.   INTRODUCTION

Plaintiff Eleanor Dehoff commenced this action on October 24, 2003, alleging that the Littlestown Area School District ("LASD") enacted or enforced an unconstitutional "chain-of-command" policy that violated her free speech and due process rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff alleged that as an individual member of the Littlestown Area School District ("LASD") board of directors she was prohibited by this policy from interviewing LASD employees about school-related business without first obtaining the permission of either the school board or the LASD superintendent.

On October 28, 2003, the Court denied Plaintiff's motion for a temporary restraining order for

failure of Plaintiff to establish likelihood of success on the merits. The Court held an evidentiary hearing on Plaintiff's motion for a preliminary injunction on November 26, 2003. Based on the testimony and documentary evidence presented at the hearing, and upon consideration of the briefs filed by Plaintiff and Defendants, the Court found that Plaintiff had failed to demonstrate that she was likely to succeed on her claims, and denied Plaintiff's request for preliminary injunctive relief. Notably, while Plaintiff's motion for a preliminary injunction was pending, Plaintiff's term on the LASD school board expired and Plaintiff was not reelected. As a result, Plaintiff amended her original complaint to assert that the LASD's alleged chain-of-command policy violated her rights as a taxpayer living within the LASD. Immediately before trial, Plaintiff abandoned her claim that her rights as a school board member were violated by the alleged policy and filed a stipulation to that effect. (Doc. No. 93.)

On October 18, 2005, the Court held a nonjury trial. During trial, Plaintiff offered testimony from four witnesses: (1) Dr. Robert McConaghy, Superintendent of the LASD; (2) Plaintiff; (3) Brian Shirk, a former employee with the LASD; and (4) Eileen Bentzen, an LASD employee in charge of food services. Additionally, Plaintiff offered into evidence correspondence between Plaintiff and various members of the LASD school board which was exchanged during Plaintiff's tenure as a board member. Plaintiff also offered two sets of correspondence between herself and Mr. Shirk and Ms. Bentzen, both of which were exchanged while Plaintiff was a member of the school board. Additionally, Plaintiff offered into evidence a very brief excerpt of the testimony of Dr. Robert McConaghy at the hearing on Plaintiff's motion for a preliminary injunction. At the conclusion of the evidence, Defendants' moved for judgment as a matter of law, arguing that the evidence of record was legally insufficient to allow Plaintiff to prevail on her claims. In denying Plaintiff's motion for a

preliminary injunction, the Court found that Plaintiff could prevail on her First Amendment claim only by demonstrating that an official LASD policy had the effect of chilling the speech of LASD employees who were willing speak with Plaintiff regarding matters of public concern.[1] Defendants argue that judgment as a matter of law is proper because the evidence presented at trial fails even to establish the existence of an unwritten chain-of-command policy employed by the LASD. The Court took the matter under advisement. For the following reasons, Defendants' motion for judgment as a matter of law will be granted.

## II. DISCUSSION

Although Defendants moved orally for a "directed verdict," the Court finds that because this matter was tried to the Court without a jury, Defendants' motion is more properly considered as being brought pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.[2] Federal Rule of Civil Procedure 52(c) provides as follows:

> If during a trial without a jury a party has been fully heard on an
> issue and the court finds against the party on that issue, the court
> may enter judgment as a matter of law against that party with
> respect to a claim or defense that cannot under the controlling law
> be maintained or defeated without a favorable finding on that issue,
> or the court may decline to render any judgment until the close of

---

[1] It bears emphasizing that Plaintiff has not claimed that any LASD policy violated her own right to speak as a taxpayer. Rather, Plaintiff's essentially claimed that an unofficial LASD "chain-of-command" policy impaired her right as a taxpayer to receive information from LASD employees, whose own free speech rights were allegedly curtailed under the alleged policy. The Court found that to prevail on such a claim, Plaintiff would need to establish not only that the LASD policy existed in the first place, but also that there were willing speakers who refrained from speaking as a result of such a policy.

[2] Defendants did not reference any specific Federal Rule of Civil Procedure when making their oral motion.

all the evidence.

Fed. R. Civ. P. 52(c). In this case, Plaintiff presented all of the evidence she elected to introduce in support of her claims and rested her case. Plaintiff's claims are entirely predicated on her threshold allegation that the LASD employs an unwritten, unconstitutional "chain-of-command" policy that restricts the right of employees and members of the public to speak about matters of public concern unless first obtaining clearance from Dr. McConaghy. Accordingly, pursuant to Rule 52(c), to the extent Plaintiff has failed to establish that the LASD actually employed or continues to employ an unconstitutional chain-of-command policy, the Court must enter judgment as a matter of law against Plaintiff with respect to all of her claims, because they are necessarily dependent on this Court finding that the LASD employed an unconstitutional chain-of-command policy in the first instance. Because the Court finds Plaintiff failed to present sufficient evidence to prove that the LASD employed or employs such a policy relating to taxpayers and other members of the public, Plaintiff cannot prevail on her claims and Defendants are entitled to judgment in their favor.[3] In reaching this conclusion, the Court has carefully considered all of the evidence Plaintiff presented at trial, a summary of which is set forth below.

Dr. McConaghy testified that he has been superintendent of the LASD since August 1996. (R. 16.) As superintendent, Dr. McConaghy does not set LASD policy, but rather interprets, implements, and administers such policy. (Id. at 16-17.) Plaintiff questioned Dr. McConaghy about LASD "Policy

---

[3] The Court emphasizes that Plaintiff has abandoned all of her claims relating to her former status as a school board member, and has elected to proceed only on her allegations that the alleged "chain-of-command" policy violated her First Amendment rights as a taxpayer.

801," which according to Dr. McConaghy establishes the procedure for obtaining written documents from the school district. (Id. at 17.) Dr. McConaghy acknowledged his testimony given on November 26, 2003, when he testified that it was his interpretation at that time that Policy 801 also applied to requests for interviews made to LASD employees. (Id. at 18.) Dr. McConaghy also testified that at one time he instructed LASD office staff that they could refer requests for interviews to him if the employee was uncomfortable with the request. (Id. at 19-20.) This instruction was communicated only to district office staff, and was not directed to any teachers or administrative staff other than those who worked within the administrative building. (Id. at 32.) Dr. McConaghy also acknowledged his conflicting testimony from November 26, 2003 where he indicated both that "it would be [the employee's] decision" whether to inform him if they were asked for an interview or meeting, and also that "they would need to, if it was a request for information or interview." (Id. at 21-22.) Dr. McConaghy indicated that his prior testimony was somewhat limited and should have been elaborated. (Id. at 23.) Dr. McConaghy testified that his incorrect interpretation of Policy 801 as applying to requests for interviews or meetings with LASD employees was, in part, informed by the atmosphere existing in the LASD at the time, particularly with respect to Plaintiff and her frequent demands for documents and other information that were disruptive of school business:

> This is when Ms. Dehoff was harassing district employees and disrupting the organization and the activities. Those people in the office were very upset with the harassment and the constant barrage of requests and I was trying to give them an option for managing the time, the place, and the manner in which Ms. Dehoff could meet. There were literally hundreds of meetings going on throughout the district at the same time, none of which came to me for approval, nor would I want them to. Teachers were meeting with

5

> teachers, parents were meeting with teachers, parents were meeting
> with administrators.  None of those meetings required approval from the
> superintendent.

(Id. at 25-26.)  Dr. McConaghy also testified that although he erroneously interpreted Policy 801 as applying to requests for interviews or meetings to discuss official LASD business, he did not actually apply the policy to require pre-clearance of LASD employee meetings or speech.  (Id. at 30.)

Dr. McConaghy further testified that he issued an official memorandum to all LASD employees advising them that the LASD school board had officially censured Plaintiff for her persistent and repeated violations of the board's policy that individual board members refrain from contacting district staff with requests for official LASD information without first contacting Dr. McConaghy or obtaining the consent of the board itself.  (Id. at 32-33.)  In that memorandum Dr. McConaghy set forth a list of guidelines to advise LASD employees as to those topics that should be considered confidential and not disseminated without authorization, such as health and personnel records.  (Id. at 32-33.)  The memorandum issued to all LASD employees did not contain specific instructions or guidelines as to how LASD employees should act upon requests for interviews or oral information.  (Id. at 33.)

On cross-examination, Dr. McConaghy testified that he has never instructed any LASD teacher, employee, or member of the administrative staff to refrain from speaking with a member of the public or a school board member if such employee were willing to speak regarding school district business. (Id. at 34-35.)  Dr. McConaghy testified further that he has never implemented a rule that required LASD employees to first clear with him a conversation they wanted to have with a member of the public or a school board member before having such conversation.  (Id. at 35.)

Plaintiff followed Dr. McConaghy as the second witness at trial.  Plaintiff testified to her

involvement within the Littlestown community, and her efforts to be involved in local politics and government. (Id. at 41-44.) Plaintiff served as a member of the LASD school board from November 1999 until December 2003, when she lost her bid for reelection. (Id. at 44-45.) Plaintiff testified that during her tenure on the school board, she would speak with LASD employees about various matters having to do with school business. (Id. at 46.) When asked to provide examples, Plaintiff indicated that in 1999 or 2000, when her son was a freshman at Littlestown High School, she learned that the school was not conducting fire drills. (Id. at 48.) After learning of this, Plaintiff approached the high school principal to inquire as to why the school was not conducting fire drills. (Id.) Shortly after this incident, Plaintiff testified that members of the LASD school board expressed concern that she was approaching LASD employees regarding school district business without first contacting Dr. McConaghy. (Id. at 50.) As another example, Plaintiff testified that she contacted a member of the school police after learning that he had attended a high school dance while carrying a gun. (Id. at 51-52.) Plaintiff testified that following her communications with this LASD employee, she received an email from John Warehime, President of the LASD school board, in which he admonished her as follows:

> It has come to my attention, you are constantly failing to follow the
> direction set down by the board regarding contacting district staff
> for information. As you know, the board has stated on several
> occasions, board members should not directly contact district
> staff with requests for information, but funnel their request[s] through
> the superintendent. The board has stated direct contact with
> district staff is counter productive, sends mixed messages, blurs
> the lines of communication and is generally harmful to the efficient
> operation of the district.

(Id. at 53; Ex. P-26.)

Plaintiff next introduced an email from Joe Bucher, another member of the LASD board, in which he criticized Plaintiff's continued efforts to solicit information from LASD staff without the consent of the board or without first approaching Dr. McConaghy.  (Id. at 57; Ex. P-30.)  In this message, Mr. Bucher advised Plaintiff that "Your position [as a board member] does not give you the authority to disrupt normal district employee's activities in order to meet your personal requirements for information.  The request and directive is simple: All requests for info. should go thru the Superintendent's office."  (Ex. P-30.)

Although the foregoing evidence relates exclusively to Plaintiff's status as a board member, Plaintiff suggested that the testimony should in fact be interpreted as a restraint against her as both a school board member and a member of the public.  In support of this theory, Plaintiff testified that John Warehime told her "many times" that "as a board member, [she] was no different than any member of the public."  (R. 58.)  Additionally, Plaintiff testified that Mr. Bucher's email to her did not explicitly articulate that the "directive" he identified applied only to school board members.  (Id. at 59.)  Apparently, this lack of specificity in Mr. Bucher's email confirmed Plaintiff's belief that her role as an elected member of the school board should not cause her to be subject to any special rules or protocol distinct from those applicable to the general public.  (Id.)

Although she lost her campaign for reelection to the school board in 2003, Plaintiff testified that she continues to ask for information, attend board meetings, request documents, and endeavors "to keep an understanding of what is happening in [the LASD]."  (Id. at 61.)  In fact, Plaintiff offered almost no evidence to support this claim, and the evidence that was offered was not probative of her claims regarding the existence or administration of an unconstitutional chain-of-command policy.

Plaintiff testified that immediately prior to trial in this action, she placed two telephone calls to Joni Rudy, the LASD business manager, and to Eileen Bentzen, the LASD director of food services. (Id. at 61-62.) Plaintiff testified that she contacted these employees because she wished to convey information "that perhaps would benefit the district." (Id.) Ms. Rudy returned Plaintiff's call, but the parties have not yet met. (Id.) Plaintiff testified that she was able to reach Eileen Bentzen, who expressed discomfort speaking with her because of the impending trial in this case at which Ms. Bentzen was to testify pursuant to a subpoena. (Id. at 63.) According to Plaintiff, Ms. Bentzen indicated she would be willing to meet with her following the trial. (Id.) This testimony represents the only evidence that Plaintiff has requested any meetings or interviews with LASD employees since this lawsuit commenced.

When pressed for reasons as to why she has made far less contact with LASD employees since losing her seat on the school board, Plaintiff testified that "[t]here has been an attitude that it was very difficult to speak with different individuals in the district, also to get information." (Id. at 64.) Other than her own subjective perception, Plaintiff provided no evidence or detail or any other persons who allegedly consider it "very difficult" to speak to LASD employees. Plaintiff also indicated that LASD response times to information requests can be somewhat slow. (Id.) When asked to explain further her reluctance to approach district staff, Plaintiff testified that she has a "feeling" that she does not want to "get anyone in trouble." (Id.) Plaintiff expressed hope that she can continue to meet with district employees in the future. (Id. at 65.)

In concluding her direct testimony, Plaintiff testified only to two of her efforts to meet with LASD employees in late summer and fall of 2003. In each of these occasions, the LASD employees

initially expressed a willingness to meet with Plaintiff, but later asked that she refer her information request through Dr. McConaghy's office. Notably, Plaintiff was a sitting school board member at the time she individually requested personal meetings with these LASD employees.

Plaintiff's third witness was Brian Shirk, a former LASD coordinator of transportation and child accounting, who testified pursuant to a subpoena. Mr. Shirk testified that he initially met Plaintiff during the first few months of his brief employment with the LASD. (Id. at 104.) Mr. Shirk testified that prior to meeting Plaintiff, she contacted him via email and requested an interview with him to discuss some matters pertaining to the LASD that were of concern to her. (Id. at 106.) Mr. Shirk replied by email that he was "looking forward to meeting" Plaintiff, and he testified that although he meant this only as a casual pleasantry, he would in fact have been willing to meet with her. (Id.) However, the proposed meeting with Mr. Shirk did not transpire, because Mr. Shirk advised Plaintiff in a further email that he had learned that the requested meeting needed to be presented to Dr. McConaghy in advance. (Id. at 107.) Mr. Shirk never, in fact, testified that Dr. McConaghy told him that he was required to clear all requests for meetings. Instead, he testified that Dr. McConaghy asked to be kept informed about other such meetings as they occurred to allow him to remain aware of various matters occurring within the district. (Id. at 108.) Mr. Shirk testified that he was never advised as to how he should handle requests for interviews, and asserted that he did not feel such instruction was necessary. (Id. at 109.)

On cross-examination, Mr. Shirk testified that neither Dr. McConaghy nor any other LASD official informed him that he would be reprimanded in any way for failing to advise them in advance if he wanted to meet with a parent or a school board member. (Id.) In fact, Mr. Shirk testified that he met with parents on numerous occasions and would inform Dr. McConaghy only if he felt it was warranted

by a particular situation. (Id. at 110.) Mr. Shirk testified that if he advised Dr. McConaghy about a particular meeting, his decision to do so was based upon "professional courtesy" rather than a directive from Dr. McConaghy. (Id.)

The final witness called at trial was Eileen Bentzen, who also appeared pursuant to a subpoena. Ms. Bentzen is the food services director of the LASD, a position she assumed in August 2002. (Id. at 111.) In August 2003, Plaintiff contacted Ms. Bentzen by email to request an interview. (Id. at 112.) Ms. Bentzen testified that when she received this email she knew who Plaintiff was, and specifically knew that she was a member of the LASD school board. (Id.) Other than receiving this email, Ms. Bentzen has had only two or three interactions with Plaintiff. (Id. at 112-113.) Upon receipt of Plaintiff's request, Ms. Bentzen advised her that she would prefer to meet for a couple of weeks after the start of the school year, and suggested a meeting on September 17, 2003. (Id. at 113.) After scheduling this meeting, however, Ms. Bentzen wrote again to Plaintiff and advised her that she happened to mention the interview to her supervisor and was informed that any questions Plaintiff had should be directed to Dr. McConaghy. (Id. at 114.) Ms. Bentzen acknowledged that she testified earlier in this case that she had been advised that requests for interviews should first be cleared by administration. (Id. at 117.) However, Ms. Bentzen attempted to clarified this testimony as follows:

> That may have been my understanding at the time, but at this point in time I talk to a lot of people, but it's for different reasons, various reasons, I should say. I speak to parents about their child's point of sale account. I speak to parents about health issues with their children. I feel very comfortable speaking to parents about food service related issues.

(Id.) Ms. Bentzen conceded that there may be certain topics she would not feel comfortable discussing

11

publicly that were "beyond [her] realm of knowledge." (Id. at 119.) On cross-examination, Ms. Bentzen testified that no LASD official had ever instructed her not to communicate with Plaintiff. (Id. at 121.) Similarly, Ms. Bentzen testified that no LASD official had instructed her not to speak with members of the public regarding matters concerning her department. (Id. at 121-122.) Ms. Bentzen did not feel that her job would be threatened if she had a conversation with Ms. Dehoff. (Id. at 122.) Ms. Bentzen testified that she has given at least one interview to a student reporter regarding the school lunch program and was not required to raise this matter with Dr. McConaghy. (Id. at 123.) Finally, Ms. Bentzen testified that Plaintiff called her immediately prior to trial, ostensibly to discuss a matter germane to the school food program. (Id. at 123-124.) Ms. Bentzen testified that she was "very uncomfortable talking with her" because the trial in this case was getting set to commence. (Id. at 124.)

Following Ms. Bentzen's testimony, Plaintiff advised the Court that she would be calling no more witnesses in support of her claims that the LASD maintained, and continues to maintain, an unwritten, unconstitutional chain-of-command policy that places a blanket restriction of the ability of LASD employees to speak publicly regarding matters of public concern without first obtaining the approval of Dr. McConaghy.[4] At that time, Defendant moved for judgment as a matter of law, and the

---

[4] At this point, Plaintiff also moved the admission of seven exhibits consisting of the following: (1) selected testimony from Dr. McConaghy taken November 26, 2003 during oral argument on Plaintiff's motion for a preliminary injunction [Ex. P-1]; (2) correspondence from LASD school board counsel, Daniel Altland, Esq., to Plaintiff dated July 3, 2001 [Ex. P-16]; (3) email correspondence from LASD board member Joe Bucher dated January 15, 2002 [Ex. P-30]; (4) email correspondence from LASD school board President John Warehime to Plaintiff dated January 7, 2002 [Ex. P-26]; (5) email from LASD school board member George Swartz to Plaintiff, apparently dated February 2000 [Ex. P-8]; (6) email correspondence between Plaintiff and Eileen Bentzen dated August 20, 2003 and August 21, 2003 [Ex. P-53]; and (7) email correspondence between Plaintiff and Brian Shirk dated September 15, 2003 [Ex. P-55].

Court took the matter under advisement and adjourned the trial pending a decision.

Upon thorough review and consideration of the trial record, including testimony and documentary evidence, the Court finds that Plaintiff failed to meet her burden of demonstrating that the LASD enacted, implemented, or administered an unwritten chain-of-command policy that regulated and restricted the ability of LASD employees to speak publicly about matters of public concern.  At best, Plaintiff has come forward with limited evidence from a narrow spectrum of time relating to her service as a school board member – a period of time that clearly appears to have contained considerable tension between Plaintiff and other members of the board relating to Plaintiff's refusal to follow school board protocol of not accosting LASD employees for interviews without first approaching Dr. McConaghy or the entire board.  However, Plaintiff presented especially limited evidence in support of her allegation that the LASD actually employed a policy to restrict the right of LASD employees to speak publicly.  The Court finds, at most, contemporaneous with Plaintiff's service as a school board member, Dr. McConaghy erroneously believed, and communicated to a select group of LASD administrative employees, that Policy 801 applied not only to written requests for information under Pennsylvania's Right to Know Law, but also to oral requests for interviews or official meetings.  This misinterpretation on the part of Dr. McConaghy, coupled with his communication to administrative staff, and two instances where LASD employees declined to meet with Plaintiff and in so doing advised that her request should first be made to Dr. McConaghy represent the sum total of Plaintiff's evidence that the LASD employed and continues to employ a blanket policy applicable to both school board members and taxpayers alike, to regulate their oral requests for information.  Although this evidence, taken out of context and in a vacuum, might facially offer some support to Plaintiff's claim, the evidence

becomes far less probative when placed in context with the remainder of the trial testimony.

First, the Court notes that Plaintiff offered no evidence relating specifically and exclusively to her capacity as a taxpayer, nor sufficient evidence that the alleged chain-of-command policy was administered to regulate the free speech of taxpayers. Instead, Plaintiff relies exclusively on evidence relating to the time during which she was a member of the school board, during which time she was frequently admonished by her colleagues for flouting a board policy that she not persist in contacting LASD employees for information without the consent of the entire board, or without first communicating with the superintendent. The record as a whole strongly suggests that Dr. McConaghy's interpretation of Policy 801 as applying to oral requests for information was driven in large part – if not entirely – by a growing sense of frustration with Plaintiff's refusal to adhere to board policy, and by concerns that an individual member of the school board was persistently approaching LASD employees in a way that was counter- productive to the proper relationship between the school board and the district employees. Although isolated portions of Dr. McConaghy's testimony indicates that he interpreted Policy 801 incorrectly, and even advised ten staff members at one time that any person making an oral request for information should be directed to him, the evidence as a whole does not cause the Court to find that the LASD ever, in fact, employed an official policy intended to restrict the free speech of taxpayers or members of the public. Instead, the Court finds that Dr. McConaghy and the LASD endeavored to restrict the efforts of an individual school board member who insisted upon acting alone and persisted in approaching LASD employees for interviews and information even after being asked on multiple occasions to follow board guidelines. Although the Court is skeptical of Plaintiff's prior claims that a school district violates the First Amendment if it regulates the manner in

which elected officials approach individual employees and staff members for requests for interviews or to obtain official information, Plaintiff has dismissed all of her claims relating solely to her capacity as a school board member. Plaintiff's lone remaining claim is that the LASD employed a policy that violated the free speech rights of taxpayers, and the Court finds the evidence of record to be unsupportive of this claim.

Moreover, the Court finds entirely unpersuasive Plaintiff's testimony that she believed she was at all times acting as both a school board member and a concerned citizen, and that because she was wearing "both hats" when she approached LASD staff to seek interviews and information, she should be considered no different than any other citizen. The record clearly indicates that the board considered Plaintiff's actions to be those of an elected official who was misusing her official position and acting outside of her appropriate capacity as a director of the school district. Despite several members of the school board expressing their displeasure and concern with Plaintiff's refusal to stop approaching LASD employees without the backing of the board or first approaching the superintendent, Plaintiff never once advised the board that she believed that she was simply acting in her capacity as a public citizen concerned about a particular issue relating to the school. Furthermore, the Court notes that both of the LASD employees who testified at trial were aware of Plaintiff's capacity as a school board member when she approached them to request information. The Court finds that regardless of isolated testimony indicating an interpretation of Policy 801 as applying to requests for interviews made by both school board members and members of the public, application at all times related strictly to Plaintiff – and her capacity as a school board member.

The Court also finds that Plaintiff failed to present any evidence that the LASD actually applied

or enforced an alleged policy against taxpayers or other members of the public that regulated requests for interviews, or in any way violated the First Amendment.  For reasons that are not clear, Plaintiff elected to support her claims that her rights as a taxpayer were violated by relying exclusively on evidence relating to her service on the LASD school board and her own requests for meetings with school employees made during this time.  However, the Court does not find this very limited evidence to be probative of Plaintiff's sole remaining claim that the LASD employs a policy that unconstitutionally regulates the speech or conduct of taxpayers alone.  Plaintiff did not offer testimony from any member of the public (other than herself) who had been denied a request for a meeting, or who were instructed to funnel such requests through the superintendent.  In the absence of any probative, conclusive evidence that the LASD in fact implemented, enforced, and continues to enforce a chain-of-command policy regulating and restricting free speech in the form of oral requests for information made by taxpayers or other members of the public, the Court finds that the record does not support Plaintiff's threshold claim that the LASD did employ such a policy with respect to taxpayers or any citizen's requests for information.

For all of the foregoing reasons, the Court finds that Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

**III.     ORDER**

**AND NOW**, this 8th day of November, 2005, for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendant's oral motion for judgment as a matter of law is **GRANTED** pursuant to Rule 52(c) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to enter judgment in favor of Defendants and to close the file.

       S/ Yvette Kane
Yvette Kane
United States District Judge